**UNITED STATES BANKRUPTCY COURT**          NOT FOR PUBLICATION

**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:

ROBIN POLANSKY SCHIFF,                      Chapter 11

                                            Case No. 04-14811 (ALG)
                        Debtor.
---------------------------------------------------------------x

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

FOX ROTHSCHILD, LLP
Counsel for Yann Geron as Chapter 11 Trustee
        By: Yann Geron, Esq.
100 Park Avenue, 15th Floor
New York, New York 10017

SHAFFERMAN & FELDMAN, LLP
Counsel for the Debtor
        By: Joel M. Shafferman, Esq.
350 Fifth Avenue, Suite 2723
New York, New York 10118

SILLER WILK, LLP
Counsel for Susan Barrie, the Guardian of the Debtor
        By: Eric J. Snyder, Esq.
675 Third Avenue
New York, New York 10017

SCHNEIDER MITOLA LLP
Counsel for 321 West 90th Street Owners Corp.
        By: Marc H. Schneider, Esq.
666 Old Country Road, Suite 412
Garden City, New York 11530


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are applications for compensation by the chapter 11 trustee (the

1

"Trustee"), counsel for the Trustee, counsel for the chapter 11 Debtor, and accountants for the Debtor. There is no objection to the commissions and expenses sought by the Trustee ($18,749.79 in commissions and $349.68 in expenses) or the fees and expenses sought by the accountants ($14,678.00). The Court has reviewed these, finds them reasonable and the respective applications are granted.

Objections to the remaining applications - by the Trustee's law firm and counsel for the Debtor - were filed by the managing agent of the cooperative apartment building in which the Debtor resides (the "Coop") and by a guardian appointed by the New York State Supreme Court to represent the interests of the Debtor (the "Guardian"). The Coop's objection was based on the premise that its charges had not been paid in full and should be brought current before any other fees or expenses are paid. The parties have committed to bring those charges current.[1] The Guardian's more broadly based objection requires further background as to the nature and history of this unusual chapter 11 case.

## BACKGROUND

This case was filed under chapter 11 of the Bankruptcy Code on July 16, 2004 by the Debtor after the Coop had commenced an eviction proceeding against her. The Debtor's father, with whom she had been living in several adjacent apartments in a building on the West Side of Manhattan, had recently died, leaving her as executrix. The Debtor had not paid maintenance to the Coop for several months, probably since her father's death, and it appears that the lawyer for her father's estate had recommended that

---

[1] At the hearing on June 22, 2010, the Coop, Trustee and Guardian addressed the amounts due to the Coop. The Coop agreed to submit to the Court the final charges owed. In its letter to the Court filed on July 20, 2010, the Coop consented to a reduction in the interest rate being charged, waived late fees, and represented that $48,931.88 was outstanding, plus any additional legal fees that may accrue. No fees or expenses of other parties can be paid if the valid maintenance and related charges are not brought up to date.

2

bankruptcy counsel be consulted. Counsel had come to the unsurprising conclusion that through a bankruptcy filing the eviction could be stayed, and the Debtor could obtain sufficient time to put her affairs in order and satisfy the arrearage through a bankruptcy filing.

In the first few months of this case counsel for the Debtor used the time provided by the automatic stay to avoid eviction and begin to put the Debtor's financial affairs in order. Eventually, however, it became apparent that the Debtor would not come to court or participate directly in the administration of the case, and that she was not competent to manage her financial affairs. After the extent of her disability became clearer, the Court *sua sponte* filed a motion to appoint a chapter 11 trustee. After a hearing and telephonic conference with all interested parties in February of 2005, the Court determined that the appointment of a chapter 11 trustee was "in the best interests of the creditors of the estate as well as the Debtor herself," and the Trustee was appointed to represent her interests as well as the interests of creditors (including the Coop). (Order of March 2, 2005, directing the appointment of a Chapter 11 Trustee, Docket No. 34.) The Court and interested parties also discussed the eventual appointment of a guardian to provide for the Debtor's long-term financial interests. Under the circumstances, it appeared that the Trustee would be well-situated to represent the interests of the Debtor during the chapter 11 case, and as further discussed below, the Trustee has acted with care and compassion throughout these proceedings.

Initially the Trustee took those steps that were both necessary and appropriate to resolve the dispute with the Coop, which was the precipitating cause of the bankruptcy.

3

He promptly retained a broker and arranged a sale of one of the Debtor's apartments.[2] On April 19, 2006, the Court approved the sale of the unit for $505,000. The proceeds from the sale were used to pay arrearages to the Coop and all other outstanding claims, including those of the Debtor's father's probate estate, as she had inherited securities and other property, as well as the apartments, from him. The Trustee then turned to the question of the Debtor's long-term financial security and the possibility of a chapter 11 plan to provide therefor. The Trustee considered various strategies to liquidate the Debtor's remaining assets to provide for her future. The Court and counsel discussed the issue of a guardian during status conferences that were held every four to sixth months.

In brief, the two main sources of funds for the Debtor's future support were the two remaining apartment units and securities from her father's estate. There were good reasons for liquidating either and also disadvantages.[3] At a hearing on December 21, 2006, Debtor's counsel and the Trustee represented to the Court that the Debtor was receptive to a plan to move her possessions into one remaining unit, put up a wall, and make the necessary repairs to market the unit and establish a trust for her from the proceeds of the sale. Thereafter on April 23, 2007, the Trustee obtained an order authorizing the continued employment of the broker to market and sell one of the remaining units.

Unfortunately, despite all efforts, the Debtor ceased cooperation and

---

[2] The Trustee chose to sell that unit first, as the Debtor lived in two adjacent units that had been physically joined and would require substantial work to separate. The unit to be sold required rehabilitation before it could be marketed, but it was a stand-alone apartment.

[3] The securities were readily marketable but their dividends comprised her only source of income. The sale of one of the two adjacent apartments was complicated by the fact that the wall between the apartments had been demolished, and although the Debtor was ostensibly occupying both, it was represented that the two apartments could be easily severed and that she used one of them principally for storage purposes. Sale of one of the remaining apartments would cut her monthly maintenance expenses in half and leave her with income from the securities.

4

communication. She became inaccessible to a degree that prohibited the Trustee from moving forward with any plans, and he moved to dismiss the case on September 14, 2007. At a hearing held on October 30, 2007, Debtor's counsel opposed the motion and expressed concern about dismissing the case at that time because the Debtor had insufficient liquid assets to continue to pay the Coop over the long term. It was agreed that the chapter 11 case should eventually be dismissed, and the pending motion to dismiss was adjourned.[4] Thereafter, it appears that Debtor's counsel spoke regularly with the Trustee and Adult Protective Services ("APS") about the Debtor's mental health. In early 2008, Debtor's counsel advised the Court that APS intended to file a petition in State court to appoint a guardian. However, with no action taken in State court, this Court, on March 19, 2008, entered an order requesting that APS expedite the matter and file a motion for the appointment of a guardian for the Debtor.[5]

Although a petition to appoint a guardian was granted soon thereafter, the first guardian appointed on October 28, 2008, was apparently unable to secure an adequate bond, and she resigned on June 19, 2009. Finally, in September 2009, a second guardian was appointed by the State court, and she eventually obtained a bond and appeared in these proceedings. Her first step on January 4, 2010 was to file a motion to replace Debtor's counsel with new bankruptcy counsel; two days later she moved to convert the case to chapter 7. Since conversion would have required the appointment of a chapter 7 trustee, it was obvious that conversion would impede rather than resolve the only remaining issue, how to transition the Debtor out of bankruptcy and into a State court

---

[4] The Trustee eventually withdrew the motion on September 22, 2008.
[5] The Court's Order of March 19, 2008 also provides that if a guardian were not appointed expeditiously, the Trustee should take further steps to protect the Debtor and creditors and reduce the accrual of costs of the instant proceeding.

5

guardianship. The Guardian then argued that before she could make a decision about how to best liquidate the assets, she needed a final determination as to the administrative expenses in this case. The Trustee's and Debtor's counsel thereafter filed interim and final fee applications, and the Guardian has objected to certain of them on various grounds.

## **DISCUSSION**

Before considering the Guardian's more specific objections to the fee applications, some of which are well taken, it is necessary to take note of the fact that the Guardian has denounced virtually everything that was done in this Court. In short, the Guardian's position is that this chapter 11 case had no legitimacy and that the only recourse of the parties once they had notice of the Debtor's incompetence was to file a petition with the State court to appoint a guardian. However, Bankruptcy Rule 1016 provides that in the event a debtor is found incompetent, the case "may" be dismissed "or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the manner, so far as possible, as though the . . . incompetency had not occurred." Premature dismissal of this case would have left the Debtor facing the same eviction proceeding that brought on the filing. It was reasonably agreed by all parties and determined that administration of the bankruptcy was in the best interests of the Debtor and that a chapter 11 trustee would be in a good position to administer the case and protect the Debtor's interests. *See Wills v. The Heritage Bank (In re Wills)*, 226 B.R. 268 (Bankr. E.D. Va. 1998), *citing* 9 Collier on Bankruptcy ¶ 1016.03 (15th ed. 2008). It is beyond dispute that a bankruptcy trustee represents the interests of the debtor as well as creditors. *See CFTC v. Weintraub*, 471 U.S. 343, 355 (1986). The

6

Trustee had the same fiduciary duty to the Debtor that a State guardian would have and he was, during the limited period of any bankruptcy case, in a good position to represent her needs effectively.

The Guardian contends that dismissal of the case and appointment of a guardian immediately would have been less expensive and more efficient.[6] However, trustees in bankruptcy are often in the best position to act as a party's representative, particularly in sales of property where title companies more readily accept title from a bankruptcy trustee than from other representatives. Therefore, given the circumstances of this case and the care with which the Trustee administered the estate and protected the Debtor's interests, the Guardian's premise that administration of the bankruptcy was improper is rejected.[7] Instead of rewriting the past, the Court will turn to the specific objections to the fee applications.

**Counsel for the Trustee**

The Guardian opposes the fee applications submitted by counsel for the Trustee on the grounds that counsel provided very little, if any benefit to the estate, charged unreasonable amounts for services that were largely unnecessary and seeks compensation

---

[6] Specifically the Guardian argues that a guardian *ad litem* should have been appointed in the landlord-tenant litigation under New York CPLR 1202(a)(2) and that the Trustee should have more promptly petitioned for a guardian under Article 81 of the New York Mental Hygiene Act ("NY Ment Hyg") to provide for the Debtor's long term needs. Section 81.01 of NY Ment Hyg provides that its legislative purpose is to "promote the public welfare by establishing a guardianship system which is appropriate to satisfy either personal or property management needs of an incapacitated person in a manner tailored to the individual needs of that person…" § 81.02 of NY Ment Hyg then requires the court to make a determination that certain standards have been met before a guardian is appointed. A guardian under § 81 of NY Ment Hyg takes on a more permanent role than a guardian *ad litem* appointed under CPLR 1202, who only represents an incompetent person's interests in a particular action. *See New York Life Ins. Co. v. V.K.*, 711 N.Y.S.2d 90, 94-95 (N.Y. Civ. Ct. 1999). There is no reason to believe that a guardian *ad litem* would have been more effective than the Trustee or would have been able to arrange a sale of one of the apartments. The delay in the appointment of a permanent guardian was not the Trustee's responsibility.

[7] Moreover, it may be noted that, as the Supreme Court has ruled, there is no "probate" or similar exception to Federal jurisdiction that requires bankruptcy courts to abstain even in the face of a pending state proceeding. *See Vickie Lynn Marshall v. E. Pierce Marshall*, 547 U.S. 293 (2006).

7

for services that should have been performed by the Trustee rather than his counsel. The Court has already rejected the Guardian's general proposition that counsel for the Trustee should be denied all fees for failure to provide a benefit to the estate. Nevertheless, under § 330(a)(1)(A) of the Bankruptcy Code, all compensation paid to professionals must be reasonable and only for "actual" and "necessary" services rendered. Under § 330(a)(4)(A) of the Bankruptcy Code,

> [T]he court shall not allow compensation for –
> (i) unnecessary duplication of services; or
> (ii) services that were not-
> (I) reasonably likely to benefit the debtor's estate; or
> (II) necessary to the administration of the case

There is no question that the legal fees sought by counsel for the Trustee are substantial. The Trustee's counsel seeks $264,401.40 in fees and $8,285.47 in expenses.[8] The Court has closely examined the applications therefor.

*Non-Legal Fees*

The first issue is whether the fees sought are for compensable legal services or, alternatively, for administrative or other non-legal services that are not compensable. The Guardian asserts that substantial portions of the fees sought are for services which are non-legal in nature and thus should have been performed by the Trustee. As the Court noted in *In re Santoro Excavating, Inc.*, 56 B.R. 546, 549 (Bankr. S.D.N.Y. 1986),

> The line between legal and non-legal services and between necessary legal services and ministerial duties of the trustee, requiring only sound business judgment is not easy to draw.

However, there is no dispute that § 328(b) of the Bankruptcy Code provides that an

---

[8] Included in the aggregate is counsel's previously awarded interim fee in the amount of $132,553.40, of which, 20 percent or $33,138.35 was held back in accordance with this Court's usual practice in chapter 11 cases. The aggregate expenses include $6,856.47 in expenses previously awarded and paid on an interim basis.

8

attorney or accountant may not receive compensation for the performance of any of the duties that are generally performed by a trustee without the assistance of counsel. *In re McKenna*, 93 B.R. 238, 240 (Bankr. E.D.Cal. 1988). In *U.S. Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp),* 930 F.2d 386, 388 (4th Cir.1991), the Court said

> [I]n drawing the distinction between legal and non-legal services and between necessary legal services and ministerial duties of the trustee requiring only sound business judgment, a court should consider whether the services could colorably constitute the type of services one would reasonably expect an attorney to perform under the circumstances.

After review of the application, it appears there is substantial administrative work that should have been performed by the Trustee or that cannot be billed to the Debtor under the circumstances.[9] This includes many items that in a business case might be compensable, such as gathering information about the Debtor's assets and liabilities and filing operating reports. In this case involving an individual debtor with extremely simple affairs, the case cannot be administered in the same manner as a case involving a corporation with multiple employees and parties in interest. In sum, it is concluded that non-legal fees totaled $39,338 (a total of 155.7 hours of work).[10]

---

[9] The fee application for the period of October 1, 2006 through March 31, 2010 indicates that over 338 hours of the 484.7 billed related to case administration (approximately $107,000).

[10] Amounts include $5,051 in fees for 31.5 hours in connection with filing operating reports; given the Debtor's limited assets and expenses, the operating reports were straightforward and did not require legal expertise. *See In re Holub*, 129 B.R. 293, 295 (Bankr. M.D.Fla. 1991). It includes $12,618.90 in fees for 34.9 hours relating to status updates; in a case such as this, communications with the Debtor, creditors, or attorneys regarding the status of the case must also be considered the kind of service to be performed by a trustee and not compensable as professional services rendered. It also includes fees in the amount of $15,700.18 for 57.2 hours for coordinating and supervising the cleaning of the apartment and logistics of selling the first apartment. None of these activities required the attention of legal counsel, as courts have often determined that routine matters performed by a trustee in the sale of property are not compensable legal fees for counsel retained under § 327 of the Bankruptcy Code. *See In re Garcia*, 335 B.R. 717, 726 (9th Cir. BAP 2005); *see also In re McKenna*, 93 B.R. at 242. In fact, at a hearing on Trustee's counsel's interim fee application on December 21, 2006, the Court expressed concern over the size of the fees and specifically observed that someone other than an attorney should supervise the clean-up of the apartment. Finally, it includes $5,968.50 in fees for 32.1 hours spent gathering information about the Debtor's financial holdings and reconciling accounts and expenses, as those activities can also be considered routine matters to be handled by a Trustee. *See In re Holub*, 129 B.R. at 296.

9

Section 330(a)(4)(A) of the Bankruptcy Code also provides that the court shall not allow compensation for unnecessary or duplicative services. The record reflects that Trustee's counsel billed over 39.7 hours to value the Debtor's securities and draft motions for both the sale of the securities and retention of a broker. Review of counsel's descriptions for the work done reveals that the time spent was duplicative and ultimately never used. There are also substantial amounts billed regarding the retention of a stockbroker and drafting a motion to appoint a guardian under NY Ment Hyg § 81 during the early summer in 2007. The motion was never filed and the securities were not sold. Additionally, there appears to be duplicative work done in the preparation of a motion for the Trustee's resignation. Lastly, counsel has billed for other duplicative work, e.g. billing for more than one attorney working on the same matter, supervising another colleague's work, and attending internal conferences. Under the particular circumstances, $60,000 should be disallowed for duplicative and unnecessary billing.

It must be emphasized that the foregoing reductions in the legal fees awarded reflect the nature of the case before the Court and the fact that the Debtor is an individual with limited assets. The same reductions might not be required in a business case. However, all cases require a court to consider whether the professionals exercised reasonable billing judgment. An assessment of reasonable billing judgment considers the following: a) is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery; b) to what extent would the estate suffer if the services were not rendered; and c) to what extent did the estate benefit from the services rendered. *See Ferrette & Slater v. United States Trustee,* 335 B.R. 717 (9th Cir. BAP 2005). In this case another important factor is that the

10

Debtor had her personal counsel, who initially seemed to have good rapport with her and who, all parties agreed, played a useful role as liaison even after the Trustee's appointment. After a review of the legal fees under these standards and taking into account the foregoing reductions, the Court finds that the Trustee's counsel's legal fees requested should be reduced by $115,600.50 resulting in an award of $148,800.50. Given that the Trustee's counsel has already been paid $99,415 on an interim basis, the balance due is $49,385.50. The request for expenses in the amount of $8,285 has not been objected to with specificity and appears to be within the U.S. Trustee's guidelines and will be approved.[11]

**Counsel for the Debtor**

The Guardian also opposes the three fee applications filed by Debtor's counsel for services performed after the appointment of the Trustee on March 2, 2005.[12] It appears that counsel's fees for the period prior to the appointment of a Trustee are not objected to. The pre-March 2, 2005 fees total $32,006, are reasonable, and are awarded. The post-March 2, 2005 amounts at issue total $49,105.50 in fees and $216.23 in expenses.[13]

The Guardian's primary contention is that *Lamie v. United States*, 540 U.S. 526 (2004), precludes a debtor's counsel from being compensated by the estate under § 330 of the Bankruptcy Code after the appointment of a trustee unless counsel is retained by the Trustee. Debtor's counsel's argument is that *Lamie* should not be applied in a chapter

---

[11] Trustee's counsel was previously awarded and paid $6,856.47 for expenses on an interim basis.

[12] Counsel for the Debtor has submitted fee applications for his current law firm, Shafferman & Feldman LLP, and for two prior law firms with which he was associated during the course of this case, Solomon, Pearl, Blum, Heymann & Stich LLP and the Law Offices of Joel Shafferman, LLC.

[13] Included in the aggregate are fees counsel had sought on interim basis in the amount of $14,761.50 and $9,252.00 after the appointment of the Trustee but which the Court held back. Additionally, the aggregate includes $18,720 sought for the period from 2/14/2007 to 10/22/2008 and $6,372 for the period 1/31/2008 to 3/31/2010. Expenses in the amount of $256.74 were previously awarded and paid for work done prior to the appointment of the Trustee.

11

11 case. He also appeals to equity as he claims that the Trustee required and requested his services and that the services he performed were necessary and beneficial to the estate.

In *Lamie,* the Supreme Court held that a debtor's lawyer could not be paid from estate funds for work done subsequent to the appointment of a chapter 7 trustee once the case was converted from chapter 11. The *Lamie* Court held that § 330(a)(1) of the Bankruptcy Code does not authorize compensation awards to a debtor's attorney from estate funds, unless counsel is employed by the trustee under § 327.[14] The Supreme Court held that it had no choice but to enforce the result of Congress's omission in the general provisions of § 327 of any authority to pay a debtor's attorney in a chapter 7 case, and it noted that in chapter 12 and chapter 13 cases, the courts were expressly authorized to allow fees to a debtor's personal counsel. *See,* § 330(a)(4)(B) ("In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney.").

The effect of *Lamie* on the fees of debtor's counsel in a chapter 11 case after a chapter 11 trustee has been appointed raises an issue of first impression. On the one hand, the Supreme Court responded to the claim that the result in *Lamie* was inequitable by warning not to overstate the effect of § 330(a)(1) of the Bankruptcy Code. The *Lamie* decision points out that although § 330 requires proper authorization for the payment of debtor's counsel, "it does not extend throughout all bankruptcy law." *Id* at 537. The court noted that "[c]ompensation for debtors' attorneys in chapter 12 and 13 bankruptcies, *for example*, is not much disturbed by § 330 as a whole." *Id* at 537

---

[14] Section 327(a) and (e) of the Bankruptcy Code allow a trustee in bankruptcy to employ attorneys to represent the trustee in carrying out his or her duties and for special purposes. 11 U.S.C. § 327(a) and 327(e).

12

(emphasis added). An individual Chapter 11 case is very much like a chapter 13 case, and there are good reasons for the debtor's counsel to remain involved in the proceedings. In the instant case, in fact, the retention of counsel for the debtor was approved even after the appointment of the Trustee. See order entered on February 17, 2006, after counsel ended his association with a prior law firm and appeared as a sole practitioner.

On the other hand, as the Guardian argues, § 327 applies in chapter 11 as it does in chapter 7, and there is no express exception providing for payment of fees to debtor's counsel in chapter 11 as there is in chapters 12 and 13. Application of the plain words of the statute would lead to denial of the instant application. However, this Court need not reach the legal issue raised by *Lamie* because there appears no dispute that a debtor's counsel is not precluded from seeking payment from the debtor personally after dismissal of a case. When a case is dismissed, unless the Court orders otherwise, dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C. § 349 (b)(3); *see In re Lewis*, 346 B.R. 89, 102 (Bankr. E.D.Pa. 2006). As further suggested by *Lewis*, the Bankruptcy Court ought to have jurisdiction to determine the reasonableness of fees prior to dismissal. Thus, where the case is dismissed, the claim for post-conversion fees should be payable from the surplus to be distributed to the Debtor after payment of all creditors' claims.

This was the approach advocated by the U.S. Trustee in connection with the interim fee application filed by Debtor's counsel. Based on *Lamie*, the U.S. Trustee objected to the fee application of Debtor's counsel for all fees and expenses accrued after

13

the appointment of the chapter 11 Trustee, recommending that since all the creditors were likely to be paid in full, Debtor's counsel's fees should be held back until the end of the case when the amount of surplus to the Debtor could be determined. When Debtor's counsel protested, the chapter 11 Trustee filed a response acknowledging Debtor's counsel's diligent efforts and careful attention to the case and agreeing with the U.S. Trustee's recommendation. On April 17, 2007, the Court entered an order that the Chapter 11 Trustee make the interim payment once it was determined that there were sufficient funds to pay all allowed claims in full.[15]

Based on the foregoing, the remaining issue is whether the fees are reasonable. Counsel seeks $81,111.50 in total fees and $485.21 in expenses for work done from the beginning of the case. His fees of $32,006 for the period prior to the appointment of a chapter 11 Trustee were not specifically objected to on *Lamie* grounds or otherwise. During this period he was the sole advocate for the Debtor and served her interests well and faithfully. The Court has reviewed these fees and finds them reasonable.

During the period subsequent to the appointment of the chapter 11 Trustee, counsel billed in the aggregate $49,105.50 for 136.4 hours of services. Most of this time was, inevitably, duplicative of the work being performed by the Trustee. There were two exceptions however. First, it was represented that counsel for the Debtor had a better rapport with her, and the ability to communicate with her, although it is not certain how long this lasted. Second, counsel unquestionably provided a valuable service in her long-term interests in connection with the Trustee's motion to dismiss.

---

[15] The interim payment was never made. The April 17, 2007 Order held back $14,761 in connection with the first interim fee application for services rendered after the appointment of the Trustee.

14

Taking into account all relevant factors as set forth above, the post-March 2, 2005 applications of Debtor's counsel should be reduced to $20,000. Counsel has already been paid $32,006 on an interim basis for fees and $256.74 for expenses for the period prior to the Trustee's appointment. This would result in payment by the Debtor of $20,000 in fees and $216.23 in expenses.[16]

## CONCLUSION

For the reasons stated above, the Trustee is awarded $18,749.79 in commissions and the accountants are awarded $14,749.79 in fees and expenses. The legal fees for the Trustee's counsel are allowed in the amount of $148,800.50 in fees and $8,285 in expenses. Given that the Trustee's counsel has already been paid approximately $99,415 in fees and $6,865 in expenses on an interim basis, the balance due is $49,385.50 in fees and $1,429 in expenses. Debtor's counsel is awarded on a final basis $32,006 for fees and $256.74 for expenses prior to the appointment of the chapter 11 trustee, all of which has been paid. The remainder of $20,000 in fees and $216.23 in expenses, for the period subsequent to the appointment of the Trustee, would be payable by the Debtor subsequent to the dismissal of the case based on the premise there was surplus returned to the Debtor.

The Trustee is directed to prepare an order for distribution to all interested counsel and the U.S. Trustee, providing for dismissal of the case. Pursuant to § 349 of

---

[16] In his Fee Application and in an amended application, counsel also seeks payment as an administrative expense of the chapter 11 case. His initial request was for services rendered as attorney for a party "in making a substantial contribution in a case under chapter 9 or 11." 11 U.S.C. § 503(b)(3) and (4). This section, however, is limited to attorneys for "a creditor, an indenture trustee, an equity security holder, or a committee…" After the Guardian correctly pointed out that counsel cannot show that he represented any of the covered entities, counsel claimed that his fees were administrative expenses as the "actual, necessary cost and expenses of preserving the estate" under 11 U.S.C. § 503(b)(1). The cases, however, have uniformly held that allowance of debtor's counsel fees under § 503(b), which applies in chapter 7 as well as chapter 11 cases, is unwarranted, as it would circumvent *Lamie* and constitute an unwarranted extension of the category of administrative claims in derogation of the purposes of §§ 328-330 of the Bankruptcy Code. *See In re Villa Luisa*, 354 B.R. 345, 348-49 (Bankr. S.D.N.Y. 2006); *In re Fortune Natural Resources Corp.*, 366 B.R. 549 (Bankr. E.D.La. 2007); *see also In re Amanat*, 340 B.R. 713, 718 (Bankr. S.D.N.Y. 2006).

15

the Bankruptcy Code, the order should provide on a final basis for the interim fees and expenses already paid and should provide for payment of the unpaid fees awarded to the Trustee and his counsel from the remaining cash in the estate after all charges of the Coop are satisfied.  To the extent there is not sufficient cash on hand, or the award would unreasonably deplete the Debtor's liquid assets, the order should provide for payment to the Trustee or his counsel from the proceeds of the sale of one of the two remaining apartments.  At the last hearing in this case, counsel for the Guardian stated that she planned to sell the apartment rather than the Debtor's securities once she took charge of the Debtor's affairs.  The order should also provide for payment on a final basis of the interim fees and expenses already paid to Debtor's counsel and that notwithstanding dismissal of the case, $20,000 in fees and $216.23 in expenses should be payable to counsel from the surplus remitted to the Debtor.

Dated: New York, New York
       August 10, 2010

                                        */s/ Allan L. Gropper*
                                        UNITED STATES BANKRUPTCY JUDGE